UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

_____

MARITZA PEREZ OVANDO,                          )
SILVIA A. GOMEZ LOPEZ,                         )
BERENICE I. ANGELES GONZALEZ,                  )
and ARIEL SANTIAGO GARCIA,                     )
                                               )
            **Plaintiffs,**                        )
                                               )
**vs.**                                            )            **Civil Action No. 5:19-cv-464**
                                               )
RAFAEL BARAJAS,                                )
                                               )
            **Defendant.**                         )
_____)

## COMPLAINT

### PRELIMINARY STATEMENT

1.       Plaintiffs Martiza Perez Ovando, Silvia A. Gomez Lopez, Berenice I. Angeles

Gonzalez, and Ariel Santiago Garcia (collectively, "Plaintiffs") are four Mexican H-2A workers

who worked in 2018 harvesting squash, peppers and cucumbers near Flomaton, Alabama, and

McDavid, Florida, as members of an agricultural labor crew headed by Defendant Rafael

Barajas, a farm labor contractor.

2.       Along with dozens of other Mexicans, Plaintiffs were lawfully admitted to the

United States pursuant to the Immigration and Nationality Act, 8 U.S.C. §1101(a)(15)(H)(ii)(A),

to perform agricultural labor from June through November 2018 for Defendant Barajas. In

accordance with federal regulations governing the admission of agricultural laborers for

temporary employment, Plaintiffs were employed pursuant to written contracts of employment,

the terms of which were dictated primarily by federal regulations.

3.       Barajas recruited Plaintiffs in Mexico through Barajas's agent, Pablo Cordero.

Based on promises of high wages and bountiful work, Plaintiffs incurred significant expenses to obtain the job, to obtain nonimmigrant visas from the United States consulate in Matamoros, Tamaulipas, Mexico, and to travel to Defendant Barajas's jobsite. Upon arrival at Defendant Barajas's jobsite, Plaintiffs soon discovered that their wages were well below those that had been promised at the time of recruitment. When Plaintiffs and other workers complained about the low wages, Defendant Barajas urged them to stay and persevere in the jobs, promising that the wages would improve or blaming the workers. Plaintiffs continued to work long hours under the hot sun without breaks and often without sufficient potable water, yet the wage problems persisted. Suspecting that crewmembers were complaining to legal representatives about the unlawfully low wages, Defendant Barajas cracked down on the workers by admonishing them against speaking with outsiders and warned them that they were beholden to him, and that their continued legal presence in the United States depended on him and remaining in his good graces. Throughout the employment, Defendant Barajas also repeatedly threatened to report workers to authorities and blacklist them from obtaining future employment in the United States.

4.      Defendant Barajas secured Plaintiffs' labor through a combination of false promises, maintaining them in a state of indebtedness, and threatening to cause them serious harm by reporting them to authorities and preventing them from obtaining employment-related visas in the future. Although they wanted to leave the unlawful working conditions, Plaintiffs remained in their jobs out of fear that Defendant Barajas would follow through on his threats and because the unlawfully low wages and failure to reimburse them left Plaintiffs financially unable to leave.

5.      Plaintiffs bring this action to secure and vindicate rights afforded them by the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the Fair Labor Standards Act

("FLSA"), and the federal regulations governing the temporary foreign agricultural worker program, as well as to seek damages for breaches of their employment contracts by Defendant Barajas.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b), this matter arising under the FLSA; by 18 U.S.C. § 1595(a), this matter arising under the TVPRA; and by 28 U.S.C. § 1331, this action arising under the laws of the United States. This Court has supplemental jurisdiction over Plaintiffs' state law causes of action, including claims for breach of contract, pursuant to 28 U.S.C. § 1367(a), because they are so related to the federal claims that they form part of the same case or controversy.

7.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), because Defendant Barajas is a resident of this district.

## PARTIES

9.      Defendant Rafael Barajas is a natural person residing in Jackson County, Florida.

10.     Between May and October 2018, inclusive, Defendant Rafael Barajas was registered as a farm labor contractor within the meaning of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1802(7), and operated as such, in that, for money, he recruited, furnished, and transported migrant and seasonal agricultural workers for agricultural employment in Escambia County, Florida, and Escambia County, Alabama.

11.     Between May and October 2018, inclusive, Defendant Rafael Barajas operated as an H-2A labor contractor within the meaning of 20 C.F.R. §655.103(b) in that he: operated a

place of business in Greenwood, Florida; had an employer relationship with Plaintiffs and the other members of his labor crew; possessed a federal employer identification number; was not a fixed situs employer; and recruited, furnished, and transported agricultural workers for the squash, cucumber, and pepper harvests on the operations of Double D Farms Partnership of Walnut Hill, Florida.

12.     Plaintiffs were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to perform agricultural labor cultivating, harvesting, and packing squash, cucumbers, and peppers for Defendant Barajas in the summer of 2018. Plaintiffs were issued H-2A visas in 2018 pursuant to this statutory provision and were employed by Defendant Barajas pursuant to these visas.

13.     Plaintiff Maritza Perez Ovando obtained an H-2A visa on May 31, 2018 and performed agricultural labor for Defendant Barajas in Florida and/or Alabama from June through October 2018.

14.     Plaintiff Silvia A. Gomez Lopez obtained an H-2A visa on June 5, 2018 and performed agricultural labor for Defendant Barajas in Florida and/or Alabama from June through October 2018.

15.     Plaintiff Berenice I. Angeles Gonzalez obtained an H-2A visa on May 31, 2018 and performed agricultural labor for Defendant Barajas in Florida and/or Alabama from June through October 2018.

16.     Plaintiff Ariel Santiago Garcia obtained an H-2A visa on July 3, 2018 and performed agricultural labor for Defendant Barajas in Florida and/or Alabama from July through October 2018.

**FACTS**

**Defendant Barajas's Participation in the Federal H-2A Visa Program**

17.    An agricultural employer in the United States, including a farm labor contractor,

may import aliens to perform labor of a temporary nature if the U.S. Department of Labor

("DOL") certifies that: (1) there are insufficient available workers within the United States to

perform the job; and (2) the employment of aliens will not adversely affect the wages and

working conditions of similarly situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a),

1188(a)(1). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

18.    Agricultural employers, including farm labor contractors, seeking the admission

of H-2A workers must first file a temporary employment certification application with the DOL.

20 C.F.R. §§ 655.130 and 655.132. This application must include a job offer, commonly referred

to as a "clearance order" or "job order," that complies with applicable regulations and is used in

the recruitment of both U.S. and H-2A workers. 20 C.F.R. § 655.121(a)–(c). The H-2A

regulations establish the minimum benefits, wages, and working conditions that must be offered

in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F.R. §§ 655.0(a)(2),

655.122, 655.132 and 655.135. Among these terms are the following:

      a.    For every hour or portion thereof worked during a pay period, the employer

          must pay the workers the highest of the federal minimum wage, the state

          minimum wage, or the adverse effect wage rate (AEWR), which is the

          prevailing wage or piece-rate wage for the work in the geographic area where

          the work is to be performed. 20 C.F.R. § 655.120. At all times relevant to this

          action, the AEWR was $11.29 per hour for Florida work and $10.95 per hour

          for Alabama work;

      b.    The employer must either furnish free and convenient cooking and kitchen

facilities or provide each worker with three meals per day. If the employer provides meals to the workers, the charges may not exceed those established by 20 C.F.R. § 655.173. The allowable meal charge during the period of Plaintiffs' employment in 2018 was $12.26 per day. 83 Federal Register 12410 (March 21, 2018);

c.  For those workers who complete the first 50 percent of the work contract, the employer must provide or pay for any transportation costs from the worker's home to the employer's jobsite which have not previously been reimbursed, as well as daily subsistence en route. 20 C.F.R. § 655.122(h)(1);

d.  For those workers who complete the contract period, the employer must provide or pay for transportation costs from the worksite to the worker's homes, as well as subsistence en route. 20 C.F.R. § 655.122(h)(2);

e.  The employer must keep accurate and adequate records with respect to the workers' earnings, the daily starting and stopping times for work, and deductions from wages. 20 C.F.R. § 655.122(j);

f.  The employer must furnish the worker hours and earnings statements on or before each payday containing, *inter alia*, the hours of work offered, the hours actually worked, and piece-work units produced daily by the employee during that pay period. 20 C.F.R. § 655.122(k);

g.  The working conditions must comply with all Federal, State, and local laws, including health and safety laws. 20 C.F.R. § 655.135(e) and 20 C.F.R. §501(c)(3)(iii);

h.  Neither the employer nor its agents may seek or receive payment of any kind

- 6 -

from the H-2A workers for recruitment costs. 20 C.F.R. § 655.135(j); and

    i.   The employer must contractually forbid any foreign labor recruiter with whom he engages in international recruitment of H-2A workers from seeking or receiving payments from prospective employees. 20 C.F.R. § 655.135(k).

19.    The clearance order also functions as an employment contract between the agricultural employer and H-2A workers. 20 C.F.R. § 655.122(q).

### Defendant Barajas's 2018 Participation in the H-2A Visa Program

20.    Prior to the start of the 2018 northwest Florida vegetable harvest, Brandon and Caleb Dortch of Walnut Hill, Florida, doing business as Double D Farms Partnership, contracted with J & J Family of Farms of Westgate, Florida, to supply squash and other vegetables to J & J's packing facility in Adel, Georgia.

21.    In order to assist it in planting, cultivating, harvesting, and packing produce to fulfill its contractual obligations to J & J Family of Farms, Double D Farms Partnership engaged the services of Defendant Barajas to serve as a farm labor contractor and recruit, furnish, and transport agricultural workers to Double D Farms' operations near McDavid, Florida.

22.    Due to a perceived lack of available U.S. farmworkers in the area of his operations, Defendant Barajas, in or about April 2018, filed an application to employ temporary foreign workers through the H-2A program. This application listed Defendant Barajas as the employer of the guestworkers and sought admission of 160 workers for employment from May 1 through November 15, 2018. For several years prior to 2018, Defendant Barajas hired temporary foreign workers from Mexico through the H-2A program.

23.    As part of the temporary labor certification application described in Paragraph 22, Defendant Barajas submitted to the DOL a clearance order, the essential terms of which were

dictated by federal regulations at 20 C.F.R. §§ 653.501, 655.122, and 655.135. The clearance order included the terms described in Paragraph 18, among other terms. As required by 20 C.F.R. § 653.501(c)(3)(viii), the clearance order contained a certification, signed by Defendant Barajas, that the order described the actual terms and conditions of employment being offered and contained all material terms and conditions of the job. The clearance order also contained an assurance from Defendant Barajas that he agreed "to abide by the regulations at 20 C.F.R. §655.135." Among other things, the regulations at 20 C.F.R. § 655.135 require that "[d]uring the period of employment that is the subject of the *Application for Temporary Employment Certification*, the employer must comply with all applicable Federal, State and local laws and regulations, including health and safety laws." 20 C.F.R. § 655.135(e). A true and correct copy of the 2018 clearance order is attached hereto as Exhibit A.

24.     On or about May 16, 2018, the DOL approved Defendant Barajas's application and granted temporary labor certification for admission of the 160 H-2A workers referred to in the clearance order described in Paragraph 22.

**Plaintiffs' Recruitment and Arrival at Barajas's Jobsite**

25.     Defendant Barajas and his agents recruited and hired individuals in Mexico to fill the positions described in Defendant Barajas's temporary labor certification application referenced in Paragraph 22. Plaintiffs were among the workers recruited and hired by Defendant Barajas and his agents. For Plaintiffs Maritza Perez Ovando, Berenice Angeles Gonzalez, and Silvia Gomez Lopez, this was the first time they had ever come to the U.S. on an H-2A visa.

26.     With respect to the 2018 clearance order described in Paragraph 23, Defendant Barajas employed Pablo Cordero to assist him in recruiting workers from Mexico. Defendant Barajas failed to contractually forbid Cordero from seeking or receiving payments from

prospective employees. Plaintiffs were among the workers recruited in Mexico in 2018. In the course of recruiting Plaintiffs, Cordero or one of Defendant Barajas's other agents informed Plaintiffs that if they accepted Defendant Barajas's job offer, they would each earn approximately (U.S.) $600 to $1000 weekly.

27.     In reasonable reliance on Defendant Barajas's promises and those contained in the contract about the terms of employment, Plaintiffs undertook considerable economic, familial, and personal sacrifices, including borrowing money and going into debt, to be able to come to the United States to work.

28.     As a condition for being selected to receive an H-2A visa to perform the tasks described in Defendant Barajas's temporary labor certification application referenced in Paragraphs 22 and 23, Plaintiff Silvia I. Gomez Lopez was required to pay Pablo Cordero a fee of 7,750 Mexican pesos, which is approximately (U.S.) $391.00.

29.     As a condition for being selected to receive an H-2A visa to perform the tasks described in Defendant Barajas's temporary labor certification application referenced in Paragraphs 22 and 23, Plaintiff Ariel Santiago Gonzalez was required to pay Pablo Cordero a fee of approximately (U.S.) $400.00.

30.     After being recruited and hired by Defendant Barajas or his agents, each Plaintiff traveled at his or her own expense from their respective homes to Matamoros, Tamaulipas, Mexico. In Matamoros, Plaintiffs were interviewed at the U.S. Consulate and issued H-2A visas. After receiving their visas, Plaintiffs entered the United States at Brownsville, Texas, and traveled at their own expense from Brownsville to the workers' housing in Atmore, Alabama.

31.     In addition to the recruitment fees described in Paragraphs 28 and 29, Plaintiffs incurred and paid additional expenses in conjunction with obtaining H-2A visas and entering the

United States to come to work for Defendant Barajas. These expenses included transportation from their respective homes to Matamoros and from Matamoros to Defendants' jobsite, lodging expenses while in Matamoros awaiting the processing of their visa applications, the cost of obtaining the visa, and a fee paid at the U.S./Mexico border for issuance of an arrival departure document referred to as Form I-94. The Form I-94 was necessary for Plaintiffs to enter the United States and work for Defendant Barajas.

32.     But for their employment with Defendant Barajas, Plaintiffs would not have incurred the expenses described in Paragraph 28, 29, and 31, other than daily subsistence.

33.     The expenses incurred and paid by Plaintiffs as described in Paragraphs 28, 29, and 31 were incurred primarily for the benefit or convenience of Defendant Barajas within the meaning of the regulations implementing the FLSA, 29 C.F.R. §531.3(d)(1), and were necessary to obtain the job.

34.     Upon their arrival at Double D Farms, Plaintiffs were assigned to housing at a motel in Atmore, Alabama. The facilities at the motel lacked convenient cooking and kitchen facilities.

**Plaintiffs' Employment With Defendant Barajas**

35.     Upon their arrival in northwest Florida and southern Alabama, Plaintiffs were employed with Defendant Barajas's agricultural labor crew performing the job activities described in Defendant Barajas's temporary labor certification application referred to in Paragraphs 22 and 23.

36.     While working for Defendant Barajas in 2018, Plaintiffs were engaged in the production of goods, including squash, cucumbers, and peppers, for commerce, within the meaning of the FLSA. Some or all of the vegetables harvested and packed by Plaintiffs were sent

to J & J Family of Farms' facility in Adel, Georgia, from which they were distributed interstate.

37.     The clearance order submitted by Defendant Barajas in conjunction with the temporary labor certification application described in Paragraph 23 served as the employment contract between Plaintiffs and Barajas.

38.     Plaintiffs were paid weekly for their labor with Defendant Barajas's crew through paychecks drawn on the account of professional employer organization Harbor America Holdings, Inc.

39.     Plaintiffs were compensated for a portion of their labor with Defendant Barajas's crew on an hourly basis, being paid $11.29 for each hour for which they were credited by Barajas. For most of their work harvesting and packing vegetables, though, Plaintiffs were paid on a piece-rate basis. However, none of the piece-rates paid were among those disclosed in Plaintiffs' employment contracts or in Defendant Barajas's temporary labor certification application described in Paragraphs 22 and 23.

40.     The expenses described in Paragraphs 28, 29, and 31 functioned as de facto deductions from Plaintiffs' wages during their respective first workweeks with Defendant Barajas in 2018.

41.     Defendant Barajas did not reimburse Plaintiffs for the pre-employment expenses described in Paragraphs 28, 29, and 31 during Plaintiffs' respective first workweek of employment.

42.     Because of the pre-employment expenses they had incurred as described in Paragraphs 28, 29, and 31, Plaintiffs earned less than the Adverse Effect Wage Rate (AEWR) and the federally mandated minimum wage during their respective first workweeks of employment with Defendant 2018.

43.     Because of the lack of cooking and food preparation facilities at the Atmore, Alabama, motel, Defendant Barajas arranged for meals to be catered to Plaintiffs and the other members of the crew. The meals provided by Defendant were substandard and insufficient; they often consisted of nothing more than a cup of milk and a cookie or snack cake.

44.     The charges for these meals exceeded the actual cost of the meals and included a profit for Defendant Barajas or an affiliated person.

45.     Although Plaintiffs' employment contracts and federal regulations required Defendant to provide Plaintiffs with three meals per day, prior to late August 2018, Defendant Barajas provided Plaintiffs with only two meals per day.

46.     Although Plaintiffs each completed 50 percent of their respective employment contracts, Defendant Barajas never fully reimbursed Plaintiffs for their inbound transportation and subsistence expenses, as promised in their employment contracts and required by 20 C.F.R. §655.122(h)(1).

47.     During their tenure with Defendant Barajas's crew, Plaintiffs worked long hours, often over nine hours a day and often as much as eleven hours or more a day. Plaintiffs routinely worked six days per week and were often required to work seven days per week.

48.     Plaintiffs worked these excessive hours under the Florida and Alabama summer heat, with little or no access to shade and little or no breaks.

49.     Defendant Barajas failed to provide sufficient potable drinking water in the fields in which Plaintiffs worked, as required by 29 C.F.R. §1928.110.

50.     Defendant Barajas failed to maintain payroll records accurately recording the compensable hours worked by Plaintiffs. Defendant Barajas chronically underreported the number of hours worked by Plaintiffs. The hours and earning statements Defendant Barajas

provided to Plaintiffs were based on the same inaccurate data as contained in the payroll records, and similarly underreported the number of hours worked.

51.     Plaintiffs' individual weekly earnings frequently totaled less than the applicable adverse effect wage rate (AEWR). At times, these earnings were less than the amount due under the minimum hourly wage provisions of the FLSA, 29 U.S.C. §206(a). On such occasions, Defendant Barajas was required to supplement Plaintiffs' individual piece-rate earnings so that they at least equaled the AEWR. 20 C.F.R. §655.122(l)(2).

52.     Defendant failed to supplement Plaintiffs' individual earnings to ensure that that these weekly earnings equaled or exceeded the AEWR, as required by the contract and 20 C.F.R. §655.122(l)(2). As a result, Plaintiffs were paid wages less than the applicable AEWR and, on occasion, the FLSA minimum wage for their work.

53.     When Plaintiffs or other workers complained about their unlawfully low wages, Defendant Barajas told them that the pay would improve if they just waited longer and worked harder. However, the pay did not improve, and Defendant Barajas never fully compensated Plaintiffs for the work they completed.

54.     When workers complained about the low wages or other injustices of the job, Defendant Barajas told workers that if they left, he would report them to governmental authorities and prevent them from obtaining work visas in the future. Thus, workers were left only with the options of withstanding the unlawful working conditions or risking loss of all future opportunities to be lawfully employed in the U.S.

55.     On or about June 22, 2018, outreach staff from Southern Migrant Legal Services (SMLS) visited Defendant Barajas's crew. SMLS provides free legal assistance to eligible agricultural workers. During this visit, in addition to speaking with some members of the crew,

SMLS staff members spoke directly with Defendant Barajas.

56.    After Defendant Barajas became aware of SMLS's visit with his crewmembers, Pablo Cordero, who recruited Plaintiffs in Mexico and served as Defendant Barajas's foreman during the 2018 vegetable season, canvassed the workers to determine which individuals had contacted SMLS to ask its staff to visit the crew.

57.    The evening of SMLS's visit, after Pablo Cordero questioned the workers, Defendant Barajas and Pablo Cordero chastised the workers and again demanded to know who had contacted SMLS, and what they told SMLS. Mr. Cordero indicated that, by making a complaint, the workers would cause many problems for Defendant Barajas, and the workers would lose their jobs. He warned the workers against voicing their complaints to SMLS or other outsiders and said that Defendant Barajas had ways of finding out who complained, and that there would be consequences for those who complained. Cordero and Defendant Barajas stated that Defendant Barajas had brought them to the United States, thus they were beholden to him.

58.    Plaintiffs Perez Ovando, Gomez Lopez, and Angeles Gonzalez understood from the statements made by Mr. Cordero and Defendant Barajas that if they did not acquiesce to the unlawful working conditions, including the illegally low wages, or if they complained about the working conditions, they would suffer consequences, including that Defendant Barajas would follow through on his threats to prevent them from obtaining future work visas in the U.S.

59.    As the 2018 vegetable season continued, wages did not improve as Defendant Barajas had promised. If anything, the wage shortages became more pronounced.

60.    As the 2018 vegetable season progressed, Defendant Barajas continued to threaten Plaintiffs and other workers.

61.    Defendant Barajas often told the workers that he had eyes and ears everywhere,

and that he was actively watching them and had ways of knowing what was going on, even when he was not around. Defendant Barajas's supervisors also regularly took pictures and videos of the workers without their permission.

62.     Because Defendant Barajas and his supervisors resided at the same motel as the Plaintiffs and the other crewmembers, Plaintiffs felt that they were being monitored at all times. Plaintiffs also believed that Defendant Barajas could get and did obtain access to workers' private rooms.

63.     Defendant Barajas frequently threatened the crewmembers that, because he was the one who brought them to the United States, he had the power to and would report them to U.S. governmental and other immigration authorities if they left their jobs, in order to have them deported and to have them blacklisted from obtaining work visas and returning to the U.S. in the future.

64.     Defendant Barajas threatened Plaintiff Gomez Lopez directly, telling her that he was going to take it upon himself to make sure she could never return to the United States again.

65.     Plaintiffs knew that Defendant Barajas was not fulfilling his promises to them under the terms of their H-2A contracts, and they wanted to leave the employment. However, they remained and continued to work for Defendant Barajas because of the debts they had incurred to obtain the job with Defendant Barajas and which they had not been able to repay due to the unlawfully law wages and, in the case of Plaintiffs Gomez Lopez, Perez Ovando, and Angeles Gonzalez, they feared that he would follow through on his threats to report them to authorities and have them barred from obtaining future employment in the United States.

66.     Plaintiffs Perez Ovando and Angeles Gonzalez wanted to quit and attempted to leave their jobs on or around September 22, 2018, but Defendant Barajas ultimately rejected their

resignation and threatened them that if they left, they would have problems obtaining a visa in the future.

67.     Plaintiff Perez Ovando surreptitiously attempted to communicate with one of the owners of Double D Farms to report the unlawfully low wages and to ask for help.

68.     Plaintiff Perez Ovando was unlawfully fired on October 18, 2018, about one week before the work ended, because she voiced complaints about unlawful working conditions.

69.     Defendant Barajas was upset that Plaintiff Perez Ovando had complained to Double D Farms about the unlawful pay and confronted her about her communication with the owner of Double D Farms. Defendant also suspected Plaintiff Perez Ovando was communicating with SMLS about bringing claims against him.

70.     Plaintiff Angeles Gonzalez's employment with Defendant Barajas ended on or around October 20, 2018, when Defendant Barajas told her that he would finally give her what she wanted, her freedom.

71.     Plaintiffs Gomez Lopez and Santiago Garcia were employed by Defendant Barajas until the work was completed on or around October 24, 2018.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
FAIR LABOR STANDARDS ACT (FLSA)

*All Plaintiffs Against Defendant Rafael Barajas*

72.     Plaintiffs assert this claim for damages against Defendant Rafael Barajas pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

73.     In 2018, Defendant was Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

74.     While working for the Defendant in 2018, Plaintiffs were employed by Defendant

within the meaning of the FLSA, 29 U.S.C. § 203(g).

75.    At all times relevant to this action, Plaintiffs were "employee[s]" of Defendant within the meaning of the FLSA, 29 U.S.C. § 203(e).

76.    Defendant violated 29 U.S.C. § 206 by failing to pay Plaintiffs the applicable minimum wage of $7.25 per hour for every compensable hour of labor Plaintiffs performed in their respective first workweeks.

77.    The violations of the FLSA minimum wage requirements set forth in the preceding paragraph resulted in part from Defendant's unlawful de facto deductions from Plaintiffs' first workweek wages arising out of Defendant's failure to sufficiently reimburse Plaintiffs for their pre-employment expenses described in Paragraphs 28, 29, and 31.

78.    The violations of the FLSA set out in this count resulted in part from Defendant's withholding from Plaintiffs' wages of sums for meals that exceeded the actual cost of furnishing these facilities.

79.    The violations of the minimum wage provisions of the FLSA as set out in this count resulted in part from Defendant's failure to credit Plaintiffs with all compensable hours worked.

80.    As a consequence of Defendant's violation of the FLSA, Plaintiffs are entitled to recover the following damages, including:

    a.    reimbursement of Plaintiffs' unpaid minimum wages, except as to Plaintiff
          Gomez Lopez;

    b.    liquidated damages equal to the amount of unpaid minimum wages; and

    c.    costs of suit and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
BREACH OF CONTRACT

### *All Plaintiffs Against Defendant Rafael Barajas*

81.     In 2018, Defendant was Plaintiffs' "employer" within the meaning of the H-2A regulations, 20 C.F.R. § 655.103(b).

82.     At all times relevant to this action, Plaintiffs were "employee[s]" and "H-2A worker[s]" of Defendant within the meaning of 20 C.F.R. § 655.103(b).

83.     The Clearance Order, attached as Exhibit A, together with the minimum terms specified in 20 C.F.R. § 655.122 and 20 C.F.R. § 655.135, constituted a valid employment contract containing all material terms of Plaintiffs' employment for Defendant.

84.     Plaintiffs performed all material contractual obligations of employment that they were called upon to perform under the terms of their employment contracts. Defendant breached the Plaintiffs' work contracts by:

> a.   failing to contractually forbid Pablo Cordero from seeking or receiving compensation from prospective employees;
>
> b.   seeking and receiving payments from Plaintiffs  Gomez Lopez and Santiago Garcia for recruitment costs;
>
> c.   failing to reimburse Plaintiffs' pre-employment expenses as described in Paragraphs 28, 29, and 31 within the first week of employment;
>
> d.   failing to pay Plaintiffs at least equal to the applicable AEWR for all compensable hours worked;
>
> e.   failing to comply with Federal and State minimum wage laws and health and safety laws relating to provision of drinking water at the jobsite. 20 C.F.R. § 655.135(e) and 20 C.F.R. §501(c)(3)(iii);
>
> f.   failing to maintain accurate payroll records in compliance with 20 C.F.R. §

655.122(j);

g.   failing to provide paystubs in compliance with 20 C.F.R. § 655.122(k);

h.   failing to provide Plaintiffs with three meals per day during the first part of the employment contract, as required by 20 C.F.R. §655.122(g); and

i.   failing to reimburse Plaintiffs at the 50%-point of the contract's term for any reasonable inbound travel and subsistence expenses not previously reimbursed for traveling from their homes in Mexico to Defendant's worksite.

85.   Defendant failed to perform his obligations under the employment contract with each Plaintiff and materially breached his contractual obligations owed to each Plaintiff during the course of the 2018 season.

86.   Defendant's breaches caused Plaintiffs substantial injuries, including pecuniary harm, mental anguish, and emotional distress.

87.   Plaintiffs seek all appropriate relief, including but not limited to compensation for all moneys paid in order to come to the United States to work for Defendant and for wages owed.

**THIRD CLAIM FOR RELIEF**
THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (TVPRA)
Forced Labor (18 U.S.C. § 1589)

***Plaintiffs Maritza Perez Ovando, Berenice Angeles Gonzalez, and Silvia Gomez Lopez
Against Defendant Rafael Barajas***

88.   Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez bring this claim against Defendant Barajas.

89.   Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez are authorized to bring these civil claims against Defendant Barajas pursuant to the civil remedies provision of the TVPRA, 18 U.S.C. § 1595.

90.   Defendant Barajas attempted to and did subject Plaintiffs Perez Ovando, Angeles

Gonzalez, and Gomez Lopez to forced labor in violation of 18 U.S.C. § 1589.

91.     Defendant Barajas knowingly attempted to and did threaten Plaintiffs Perez

Ovando, Angeles Gonzalez, and Gomez Lopez with serious harm in order to obtain the labor and

services of these Plaintiffs, in violation of 18 U.S.C. § 1589(a)(2).

92.     Defendant Barajas knowingly attempted to and did obtain the labor and services

of Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez using a scheme, plan, or

pattern that, in the totality of the circumstances, was intended to and did coerce Plaintiffs to

believe that they would suffer serious harm if they were to leave the employ of Defendant, in

violation of 18 U.S.C. § 1589(a)(4).

93.     Defendant Barajas's scheme to use threats of immigration consequences and

financial harm was designed to convince Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez

Lopez that they would suffer serious harm if they were to leave Defendant's employ and to

falsely imprison them at the farm.

94.     Defendant Barajas threatened Plaintiffs Perez Ovando, Angeles Gonzalez, and

Gomez Lopez with being prohibited from returning to the United States on work visas in the

future and threatened to contact immigration authorities, in a manner that constitutes an abuse of

the legal process under 18 U.S.C. § 1589(a)(3).

95.     As a proximate result of Defendant's conduct, Plaintiffs Perez Ovando, Angeles

Gonzalez, and Gomez Lopez have suffered emotional injuries and other damages.

96.     Under the TVPRA, Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez

Lopez are entitled to recover compensatory and punitive damages in an amount to be proven at

trial, including:

      a.   damages for reimbursement of Plaintiffs' inbound travel and other work-

related expenses;

b.   damages for wages owed;

c.   damages for emotional pain and suffering, including nervousness, grief,

worry, mortification, shock, humiliation, indignity, embarrassment, panic,

apprehension, or ordeal experienced;

d.   punitive damages; and

e.   attorney's and expert fees, and costs as authorized by 18 U.S.C. § 1595.

## FOURTH CLAIM FOR RELIEF
### THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT (TVPRA)
Trafficking (18 U.S.C. § 1590)

*Plaintiffs Maritza Perez Ovando, Berenice Angeles Gonzalez, and Silvia Gomez Lopez*
*Against Defendant Rafael Barajas*

97.     Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez bring this claim

against Defendant Barajas.

98.     Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez are authorized to

bring these civil claims against Defendant Barajas pursuant to the civil remedies provision of the

TVPRA, 18 U.S.C. § 1595.

99.     18 U.S.C. § 1590 provides that "[w]hoever knowingly recruits, harbors,

transports, provides, or obtains by any means, any person for labor or services in violation of this

chapter," including the laws prohibiting forced labor, has engaged in unlawful behavior under

the TVPRA.

100.    Defendant Barajas knowingly recruited, transported, provided, and obtained

Plaintiffs for labor and services in violation of the laws prohibiting forced labor, as described in

Plaintiffs' Third Cause of Action.

101.    As a proximate result of Defendant's conduct, Plaintiffs Perez Ovando, Angeles

Gonzalez, and Gomez Lopez have suffered emotional injuries and other damages.

102.     Under the TVPRA, Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez are entitled to recover compensatory and punitive damages in an amount to be proven at trial, including:

   a.   damages for reimbursement of Plaintiffs' inbound travel and other work-related expenses;

   b.   damages for wages owed;

   c.   damages for emotional pain and suffering, including nervousness, grief, worry, mortification, shock, humiliation, indignity, embarrassment, panic, apprehension, or ordeal experienced;

   d.   punitive damages; and

   e.   attorney's and expert fees, and costs as authorized by 18 U.S.C. § 1595.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court enter an order:

(a)     Declaring that Defendant, by the acts and omissions described above, violated Plaintiffs' rights under the minimum wage provisions of the FLSA at 29 U.S.C. § 206(a) as set forth in the First Cause of Action;

(b)     Granting judgment in favor of Plaintiffs on their FLSA minimum wage claim as set forth in the First Cause of Action and awarding them their unpaid minimum wages, an equal amount in liquidated damages, costs of court, and attorney's fees;

(c)     Granting judgment in favor of Plaintiffs on their contract claim as set forth in their Third Cause of Action and awarding them damages for Defendant's contractual breaches;

(d)     Declaring that Defendant, by the acts and omissions described above, violated the

rights of Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez under the forced labor

provision of the TVPRA at 18 U.S.C. § 1589 as set forth in the Third Cause of Action;

       (e)     Granting judgment in favor of Plaintiffs Perez Ovando, Angeles Gonzalez, and

Gomez Lopez on their TVPRA forced labor claim as set forth in the Third Cause of Action and

awarding them damages, including compensatory and punitive damages, and attorney's fees;

       (f)     Declaring that Defendant, by the acts and omissions described above, violated the

rights of Plaintiffs Perez Ovando, Angeles Gonzalez, and Gomez Lopez under the trafficking

provision of the TVPRA at 18 U.S.C. § 1590 as set forth in the Fourth Cause of Action;

       (g)     Granting judgment in favor of Plaintiffs Perez Ovando, Angeles Gonzalez, and

Gomez Lopez on their TVPRA trafficking claim as set forth in the Fourth Cause of Action and

awarding them damages, including compensatory and punitive damages, and attorney's fees;

       (h)     Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

       (i)     Awarding Plaintiffs their costs; and

       (j)     Granting such other relief as this Court deems just and appropriate.

                               Respectfully submitted,

                               ***/s/ Gregory S. Schell***
                               Gregory S. Schell
                               Florida Bar Number 287199
                               SOUTHERN MIGRANT LEGAL SERVICES
                               A Project of Texas RioGrande Legal Aid, Inc.
                               311 Plus Park Blvd., Ste. 135
                               Nashville, TN 37217
                               Telephone: (615) 538-0725
                               Facsimile: (615) 366-3349
                               gschell@trla.org

                               ATTORNEY FOR PLAINTIFFS